UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 19 CR 474-2 |
| vs. | ) | |
| | ) | Judge Mary M. Rowland |
| JASON SCHIFF | ) | |
| | ) | |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The UNITED STATES OF AMERICA, through its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, hereby respectfully moves this Court to impose a sentence at the low end of the applicable advisory guideline range, and in support of its recommendation the government states as follows:

**I.    Presentence Report**

The government has no objections or corrections to the PSR other than to note that the defendant reported that he never filed for bankruptcy protection (PSIR at ¶86); but this is contrary to his June 2019 statement to Pre-Trial Services.[1]    The government agrees with and has no objection to the

---

1   Defendant reported to Pretrial Services on that he filed for Chapter 11 bankruptcy for his company, Hamakor Judaica Group, in June 2019; however, the government can find no bankruptcy filing on PACER.

1

proposed conditions of supervised release.

## II.   Sentencing Factors

Although the sentencing court must consider the advisory sentencing guideline range in imposing sentence, it is just one factor to be taken into consideration in addition to the factors set forth in 18 U.S.C. §3553.   In considering all of these factors, the government believes a sentence at the low end of the applicable guideline range, that includes restitution, and a requirement that he perform community service is appropriate.

Between 2005 and 2012, defendant fraudulently secured mortgage loans through the use of false information and documents regarding his income and employment. This conduct resulted in a loss of at least $843,359.

In October 2005, Jason Schiff purchased the condominium located at 910 W. Madison #802 from his brother Yale Schiff for $395,000.   Jason funded the purchase by obtaining a $375,200 mortgage loan.   In obtaining the loan, Jason signed at least two loan applications both of which were submitted to the lender.   On the loan applications, Jason falsely claimed to be employed by Money in Minutes, Inc., earning between $8,333 and $6,750 per month ($99,996 to $105,000 annually).   He falsely claimed that he had been so employed for five years (since 2000).   The lender was given fictitious paystubs

as well as fictitious 2003 and 2004 Forms W-2 which purported to show that Money in Minutes paid Jason Schiff wages in the amounts of $101,485 and $106,870.

As reflected in the PSIR, Jason Schiff was never employed by Money in Minutes, but rather Hamakor Judaica, Inc., at a substantially lower salary. Further, IRS records reflected Jason's actual reported wages between 2003 and 2005 ranged between $36,400 and $47,712. His true income and cashflow would have been insufficient for him to have obtained this loan.

In obtaining the mortgage loan, Jason also signed a HUD-1, in which he falsely represented that he was the source of the $28,162 which he used at the closing to complete the purchase. At the time he signed his HUD-1, Jason knew that his brother had supplied the funds and that the HUD-1, and that the HUD-1 also failed to report the existence of an outstanding mortgage on the property. Following the closing, Yale Schiff, as seller of the property received $340,728 from the loan proceeds.

In October 2009, Jason Schiff secured a $255,000 HELOC loan using the 910 W. Madison #802 property as collateral. In his signed application to the lender, Jason Schiff falsely claimed that he was employed at ATLSI, LLC as a regional manager, had been employed in this capacity for the past 3 years, and

that he earned $203,769 in annual income. Conversely, IRS records showed that Jason's sole reported wage income in 2008 and 2009 was from Hamakor Judaica and totaled $52,923 and $56,000. In obtaining the HELOC, Jason also signed a "Title Lien Protection" affidavit in which he falsely represented that ether were no mortgages or other liens against the property, despite knowing that he had an outstanding unpaid mortgage loan in the amount of $375,200. He signed the affidavit knowing that he was continuing to make monthly mortgage payments on that loan.[2] As a result of his conduct, Fifth Third Bank issued a HELOC to Jason collateralized by the Madison Street property.

Between 2009 and 2012, Fifth Third disbursed more than $500,000 on the HELOC loan. The proceeds of the HELOC were deposited into bank accounts in Jason's name at Fifth Third and checks issued on this account included those made payable to himself, Caroline Schiff, Ivan Schiff, 1000 W. Adams LLC, ACM Management, and David Izsak.

Defendant's conduct in obtaining the mortgage and HELOC loans resulted in a loss of approximately $843,359. However, the count of conviction is limited to the fraud in connection with obtaining his Citibank loan, and

---

2   Between 2005 and 2011, Jason made monthly mortgage payments on the Citibank mortgage on this property.

consequently, restitution is limited to $306,585, payable to Citibank and Stewart Title.

Defendant offers little justification or excuse for his conduct. The size of the fraud was audacious. He obtained what he perceived to be as a better living arrangement than that which he had by helping his brother defraud banks. Defendant shows no remorse for the offense and demonstrates no misgivings about committing it, beyond his concern that he was not the "favorite" child and that he looked up to his older brother. His suggestion that his upbringing was lacking, or that he failed to meet his parent's expectations, in no way explains or justifies his conduct.

Similarly, his actions were so unambiguously wrong that he cannot minimize his culpability by suggesting that he didn't appreciate the criminal nature of his acts or that he is less responsible because he agreed to participate in a collaborative fraud conceived by his brother. Rather, any such suggestion underscores a lack of recognition that he was responsible for his actions, and that his actions were unambiguously wrong. At bottom, Jason Schiff knew better. He had opportunities that many others did not have. He had the opportunity to grow up in a safe neighborhood, to obtain an education from good schools, and to obtain employment. His crime was not one born of

necessity or compulsion. He was not tricked, misled, or deluded in committing the crimes.

Residential mortgage-based fraud is not without victims. The financial crisis of 2008 was triggered by fraud in the residential mortgage industry. Losses caused by this type of fraud effects both lenders and borrowers and makes borrowing by honest homeowners more difficult and costly. Mortgage fraud is most commonly associated with borrowers, and income falsification is at the heart of such fraud. General and individual deterrence require that the sentence imposed be sufficient to deter others who are in a position to commit similar acts.

### III. Kinds of Sentences Available

The maximum term of imprisonment is twelve months' imprisonment, and a fine of $100,000. The Sentencing Guidelines provide for an advisory Guideline Range of 12 months' imprisonment. The Probation Office has recommended a sentence of four months' imprisonment, restitution, no fine, and a one-year term of supervised release.

### IV. To Avoid Unwarranted Sentence Disparities

The Seventh Circuit has previously held that a sentence within the advisory guideline range is the surest way to avoid unwarranted disparities because the Guidelines are designed to ensure like treatment of like situations.

*United States v. White*, 737 F.3d 1121, 1144 (7th Cir 2013) *citing United States v. Babul*, 476 F.3d. 498 501-02 (7th Cir. 2007).

## V.  Conclusion

Defendant's conduct was willful. The sentence imposed must be sufficient to account for the seriousness of the offense, to deter the defendant and to deter others.   Defendant's crime was not born of necessity or compulsion.   Defendant was not duped into committing the offense, nor did he impulsively blunder into it.   It was not a crime of desperation or financial necessity.

For these reasons, the government believes that a sentence at the low end of the applicable guideline range is appropriate.   Additionally, any sentence imposed should include restitution in the amount of $306,585.   Any sentence imposed should also include a substantial amount of community service.

Respectfully submitted,

MORRIS PASQUAL
United States Attorney

By: *s/Patrick J. King, Jr.*
Patrick J. King, Jr.
Assistant United States Attorney
219 S. Dearborn Street
Chicago, IL 60604